McCONNELL v. SIMPSON et al.

(*Circuit Court, D. Nebraska.* November 30, 1888.)

COUNTIES—WARRANTS—NEGOTIABILITY — TREASURER — OFFICIAL BOND — MAL·FEASANCE.

Where a county treasurer, who by law was forbidden to buy or sell, or in any manner deal in county warrants, upon payment of a county warrant neglects to cancel it, but marks it, "Not paid, for want of funds," and puts it into circulation, a subsequent holder, though he purchased it for value and in good faith, cannot maintain an action against the sureties on the official bond of the treasurer for alleged malfeasance in office.

At Law. On demurrer to petition.

Action by Samuel P. McConnell against Duke W. Simpson, Thomas B. Stevenson, Monroe L. Hayward, James W. Eaton, William B. Hargus, Jacob Siehl, Rufus F. McComas, Josiah Rogers, and Robert P. Draper on the bond of Duke W. Simpson, as county treasurer of Otoe county, Neb.

*Warran & Ransom,* for plaintiff.

*Stevenson & Hayward,* for defendants.

DUNDY, J. Defendant Simpson was at one time county treasurer of Otoe county, one of the counties in this state. All of the other defendants were sureties on his official bond. Simpson is charged with malfeasance in office, in consequence of which, it is alleged, the plaintiff was injured to the amount of about $3,900, and the plaintiff seeks to hold the other defendants responsible for such alleged malfeasance. Before this action was commenced the plaintiff had sued Simpson alone in this court, and had recovered a judgment against him for the said sum. Simpson was described as treasurer of Otoe county in that suit, and the wrongs complained of were attributed to him in his official capacity.

No defense was made by Simpson, he being in the penitentiary of this state at the time; having been convicted of embezzling the public funds, and judgment went against him by default. None of the other defendants, so far as the record shows, ever appeared or knew of that suit. It was made to appear in the other suit that Simpson, while he was the treasurer of Otoe county, sold, or in some way put in circulation, several county warrants, which formed the basis of that suit. That the warrants finally came into the hands of this plaintiff, who claimed to be the *bona fide* holder of the same; but, before the said Simpson was sued, the plaintiff had brought suit against Otoe county, on the identical warrants, and he was defeated in that action, for the reason that Otoe county had redeemed the warrants with its own money, by paying the amount to the lawful holder and owner thereof. Simpson was at the time the treasurer of the county, and received the warrants from the holder at the time of the redemption; but he neglected to cancel the same, as the law required him to do, but, instead of doing that, he indorsed on the warrants, "Presented for payment, and not paid, for want of funds." Some time after this was done, he sold or transferred, or in some way put on the market, either by himself or through his confederates, a large number of warrants, of which the ones in question were a part, most of which had been redeemed with the public money, and by himself as county treasurer. These warrants partake of the character of negotiable paper to some extent, but not for all purposes. Title to the same vests in the purchaser by mere delivery, they being payable to bearer. But the county was not deprived of the right or opportunity to make any proper or valid defense to the suit based on such warrants, any more than it would have been had the suit been brought by the original payee. Briefly stated, this is the condition of things out of which this litigation grows: The county commissioners of Otoe county issued several warrants on its treasurer, payable to.——— or bearer. The warrants were duly delivered to the payee therein named, who was the rightful holder and owner thereof. He presented the same to Simpson, the treasurer, for payment, and they were redeemed by him with the public money. He neglected to cancel the same, as he ought to have done, but instead thereof marked on them, "Not paid, for want of funds." He afterwards let them go out of his office, to find their way onto the market, and eventually into the hands of this plaintiff. Suit was brought against the county on the warrants, and the plaintiff was defeated in his effort to compel the county to pay the warrants the second time. Then Simpson was sued for his misdemeanors in office, and a judgment was obtained against him for the amount claimed in this suit.

At the time Simpson was such county treasurer, and long before, the laws of this state prohibited the county treasurer from buying or selling, or in any way dealing in, county warrants, and made it a penal offense to do so. He was perfectly well aware of that, as subsequent proceedings have fully demonstrated. Whoever procured the warrants from him must have had abundant opportunity to know, and reason to believe, that fraudulent practices were being indulged in by both parties to the

transaction. The purchaser, if such there ever was, must have known that he had no right to the warrants issued to another, especially when found in the hands of the treasurer, whose duty it was to pay them, and who was forbidden by law to sell them. There was no honesty or good faith in the transaction. There could have been none. It was *malum prohibitum*. It was about as bad as anthing in that line could be; and the person or persons, whoever he or they may be, who received the warrants, stand in but little, if any, better light than Simpson himself. Does the present holder, though a *bona fide* purchaser, stand in a more favorable light, so far as the law is concerned, than the person who first took the warrants from Simpson, after they had been paid? It is submitted that he does not, because no person could purchase and hold them divested of the original taint resting on them. The county, and the sureties as well, can make the defense here relied on, which is most effective. The numerous transfers of the warrants sued on did not impart to them any additional value. The right to make any defense thereto remains intact; and, as the person who took the warrants from the treasurer was *particeps criminis*, neither he nor those claiming under him have any standing in court.

Numerous other questions are raised by the demurrer, but it is unnecessary to consider them. The demurrer must be sustained.