[No. 2622.  Decided June 25, 1897.]

# W. C. BARDSLEY, *Appellant,* v. W. A. STERNBERG, Treasurer of the City of Tacoma, Respondent.

MANDAMUS — WHEN LIES — ESTOPPEL — CITY WARRANTS — NEGOTIABIL-
ITY — REISSUANCE BY TREASURER AFTER PAYMENT — VALIDITY OF
SALARY WARRANTS.

Mandamus will lie to compel the payment of warrants only when the action presents merely a question of law, or involves questions of fact which are conceded and presents substantially a question of law upon such conceded facts.

Mandamus to compel the payment of warrants, will not lie when the claim involves a question of estoppel.

A city is not estopped from disputing its liability upon warrants once paid by its treasurer and subsequently reissued by him, from the fact that the funds received thereby had been transferred to the city's credit, if there is no proof that any of the city officers, aside from the treasurer, knew that the warrants had been once paid and subsequently reissued by the treasurer.

Warrants issued by a city are not negotiable in the sense of excluding inquiry into the legality of their issue or of excluding defenses thereto, and a subsequent holder does not occupy the position of an innocent purchaser.

A city treasurer has no authority to obtain the warrants of the city by paying the city's money therefor, and then subsequently reissue the warrants to purchasers; and in such case the city, in the absence of knowledge or ratification of such action, is not liable on the warrants, but the right of action of the purchasers is against the treasurer.

Where a city treasurer has paid out the city's money to obtain its warrants from holders thereof, his intention to carry them as cash and afterwards reissue them to third parties would not defeat the city's right to treat the matter as a payment of such warrants.

The duties of a city treasurer are fixed by law and all parties dealing with him are bound to take notice of the limitation upon his powers, and that as such he has no authority to issue municipal obligations, nor to reissue city warrants once paid by him.

Salary warrants issued by the city of Tacoma in pursuance of an ordinance of the city council fixing salaries, under the pro-

visions of the freeholders' charter of 1890 delegating such power to the city council, are illegal, since the act enabling the city to frame its own charter required that the salary of elective officers be provided for in the charter itself.

Appeal from Superior Court, Pierce County.—Hon. J. A. WILLIAMSON, Judge. Affirmed.

*Alfred E. Buell,* and *Crowley & Grosscup (Hornblower, Byrne, Taylor & Miller, Tillinghast & Pritchard, Doolittle & Fogg, Charles Richardson* and *F. D. Nash,* of counsel), for appellant.

*John A. Shackleford, Joseph S. Whitehouse, David F. Murry,* and *John C. Stallcup,* for respondent.

The opinion of the court was delivered by

SCOTT, C. J.—This was an application by the appellant to the superior court of Pierce county, for a writ of mandate against the city treasurer, to compel him to pay the amount of five city warrants held by the appellant. The decision below was in favor of the treasurer. In passing upon the questions presented by the appeal we will first devote some attention to the point as to whether the appellant sought an appropriate remedy.

Two of the warrants were originally issued to George H. Boardman and R. A. Gove, respectively, for salaries for certain months as city councilmen. The other three warrants had been issued to J. M. Bunn, George McD. Arkley and A. S. Dautrick, respectively, but it does not appear for what they were issued. The warrants were in the ordinary form, payable to said respective parties or their order, and drawn on the general fund. No question is raised about their being regular in form and fair upon their face. Nor, except the two salary warrants, is it disputed that they were lawfully issued to the first holders. Payment was resisted upon two grounds. It was contended

upon the part of the respondent, as to the salary warrant
issued to Gove, and the three other warrants, that they had
been once presented to the treasurer and paid.   It was also
contended that the councilmen were not entitled to salaries
under the law, and that the issuance of the salary warrants
was entirely unauthorized, this being the only defense to
the salary warrant issued to Boardman.

In *Abernethy v. Town of Medical Lake*, 9 Wash. 112.
(37 Pac. 306), we held, where a claim had been regularly
allowed, but where the warrants issued therefor were irreg-
ular, and the treasurer refused to pay them, that an action
would not lie on the claim against the town, but that the
remedy was by mandamus to compel the issuance of regular
warrants.   And in *Cloud v. Town of Sumas*, 9 Wash. 399
(37 Pac. 305), we held that an action would not lie upon
the warrants there in controversy, but that the remedy was
by mandamus to compel payment.   In both of these cases,
however, only questions of law were presented upon con-
ceded facts relating to the validity of the claims; and when
the matters involved in the last case were again before the
court in *Cloud v. Lawrence*, 12 Wash. 163 (40 Pac. 741),
we held the town estopped upon the record from raising a
question as to the regularity of the warrants, in consequence
of their having conceded in the first action that they were
regular, and in the last action relator had sued for a man-
damus to compel their payment.   No questions of fact
were presented for consideration in those cases.

But the same state of facts does not exist with reference to
all the warrants involved in the matter now before us.   The
remedy would have been appropriate as to the one salary
warrant which was not claimed to have been paid, as only
a question of law is presented thereby.   Ordinarily a man-
damus could only lie to compel the performance of a min-
isterial duty where the facts are conceded.   In this case

the question of the payment of the warrants aforesaid was
a disputed one, but as presented it was substantially a ques-
tion of law upon the facts, the material facts not being
controverted, and the controversy being rather as to the
construction to be put thereon.

It is admitted that the warrants, excepting the one is-
sued to Boardman, were after their issuance presented to
.the city treasurer for payment, and that he paid to the
holders thereof the respective amounts called for out of
the funds of the city in his hands; that instead of cancell-
ing them he, or some one in his office, thereafter disposed
of them to other persons, but in just what manner is not
made to appear, and they afterwards found their way into
the hands of the appellant. One controversy is as to
whether such action on the part of the treasurer constituted
a payment of the warrants. The appellant contends that
said warrants could not have been regularly paid at that
time as there were prior warrants outstanding entitled to
be first paid, and that there were not sufficient funds to
take them all up. This was one of the disputed facts in
the case, but it is not very material here. The appellant
further contends that there was no intention upon the part
of the treasurer to pay said warrants at that time, and that
his acts in question did not constitute payment. This will
be considered later.

The court seems to have admitted all the proof offered
with reference to the issuance of these warrants and the
facts relating to the question of payment in the first in-
stance; so that this is substantially a question of law only.
But it was further contended by the appellant that the
city was estopped from denying the validity of these war-
rants in consequence of the fact that upon their reissuance
the parties who obtained them paid into the city treas-
urer's hands the amounts of money called for by them re-

spectively, and that said treasurer gave the city credit therefor. The facts as to this matter are disputed and it is apparent that such a question could not be properly triable in a proceeding of this kind, nor would a disputed question of payment by the treasurer where the facts were in controversy. Upon such matters the respondent was entitled to a jury trial. Also, matters of estoppel must ordinarily be raised by the pleadings. But in this case the question of the availability or appropriateness of the proceeding is not a very material one. The respondent was the objecting party and, of course, he can claim no prejudicial error with regard to the manner of the trial, for the judgment was ultimately rendered in his favor. The question could become material only in considering the refusal of the court to permit the appellant to introduce in evidence a report of the finance committee purporting to cover the times in controversy, it being contended that the statement of the amount of money in the treasury, etc., would show that the funds received upon the reissuance of these warrants had been transferred to the city's credit, and this would apply directly upon the question of an estoppel, which could not be properly tried in this proceeding. But in any event there was no error in excluding this report as there was no proof, and no offer of any proof, to show that at the time this report was made by the finance committee and adopted by the council any of the city officers, aside from the treasurer, knew that these warrants had been once paid and subsequently reissued by the treasurer, and unless they knew that fact and knew for what the money had been received, there could be no estoppel. Had the city known these facts it might have preferred to treat the warrants as paid and satisfied instead of valid outstanding obligations, and in such case the most the parties holding such warrants would be entitled to would be to recover from the

treasurer the money that they paid therefor. It may be, also, that if the original payment was unauthorized in consequence of there being prior outstanding warrants entitled to payment, the holders of such warrants would be entitled to some rights in the premises, and what action the city would take with such knowledge might have depended in a measure upon the claims of these parties, and the amount of its available moneys. The proof in question was insufficient to base an estoppel upon, and there was no further proof tendered to make it relevant or competent.

The only other matter complained of is that the court refused to admit in evidence an ordinance purporting to ratify and confirm warrants which had been issued between April 19, 1892, and October 31, 1893, which had not been specially authorized. But we see no relevancy in this proof, for this ordinance did not purport to authorize a reissuance of any warrants which had once found their way into the hands of the treasurer. The appellant having sought his remedy by mandamus and the proof offered by him, which was rejected, not being admissible under any form of action, and the judgment having been in favor of the respondent, the question as to whether the remedy was a proper one or not is, as stated, immaterial at this time, although we have seen fit to consider to some extent the question in order to settle, if possible, the practice in the future. It may occasionally be a matter of doubt as to whether the remedy of a warrant holder should be by mandamus to compel payment by the treasurer or should be by an action against the municipality. Ordinarily the ground upon which payment was refused would be known, and if the facts were conceded and the liability a question of law only, mandamus would be appropriate. Otherwise, in the case of disputed facts, the remedy should be sought

in an ordinary action.    *People v. Johnson*, 100 Ill. 537
(39 Am. Rep. 63).

What we have said with reference to the facts disposes
of some of the contentions of the appellant in the further
consideration of the case, and we will now consider the
question as to whether the facts stated constituted a pay-
ment of the warrants as against the appellant.   While it
is not shown how or from whom appellant obtained the
warrants, we start with the proposition that a subsequent
holder would have no greater rights than the party to
whom they were first reissued; for, while title to such choses
in action may pass by delivery or indorsement, they are not
negotiable in the sense of excluding inquiry into the le-
gality of their issue or to exclude defenses thereto.   *Union
Savings Bank v. Gelbach*, 8 Wash. 497 (36 Pac. 467);
1 Dillon, Municipal Corporations (4th ed.), § 487; *People
v. Johnson, supra; Mayor v. Ray*, 19 Wall. 468, 477; *Dis-
trict of Columbia v. Cornell*, 130 U. S. 655, 661 (9 Sup.
Ct. 694); *Hill v. Memphis*, 134 U. S. 198, 204 (10 Sup.
Ct. 562).

Therefore, whoever held them subsequent to their re-
issuance was charged with notice that the treasurer had
once obtained them by paying out the city's money.   It
goes without saying that the treasurer had no authority
to deal with warrants in that way.   The appellant does not
controvert either of these propositions.   In fact, in rela-
tion to the last one, he says in his brief:

" Neither appellant nor his counsel would admit for a
moment the right of treasurers to use public funds to spec-
ulate in warrants, and they insist that the courts ought to
set their faces strenuously against such practice.   And it
is submitted that the most efficient means of accomplish-
ing that end would be for the courts to hold the treasurers
strictly to the law, and if they cash a warrant out of its

order, to treat it as a defalcation and misappropriation of funds."

Undoubtedly the city would have a right to so treat it. But a different question is presented when considered with reference to the case presented by the appellant. While the city might repudiate the action of the treasurer in taking up the warrants out of their regular order, if he did so, other parties might not have that right. The city would also have a right to treat the matter as a payment and satisfaction of the warrants, even though they were paid out of their regular order. The parties who obtained the warrants from the treasurer can claim no benefit from such irregularity as to the time of payment. This could only affect the city and holders of other prior warrants, if there were any. Of course, if the city with knowledge of the facts had ratified the action of the treasurer or knowingly appropriated the money obtained by the treasurer on their reissuance, such action would have been the foundation for a claim against the city on the part of those parties obtaining or holding the warrants after their reissuance, for the money paid. And if the city with such knowledge had repudiated the action of the treasurer, then a right of action might have arisen as against the treasurer, on the part of the parties obtaining the warrants, for a recovery of the money so paid to him, but this would not have been a valid claim against the city. But, as before stated, there was no proof that the city council or officers other than the treasurer had any knowledge that he had obtained these warrants and reissued them; and none of any custom or practice upon his part to so deal in them as treasurer, or even to buy and sell them as an individual. No estoppel could arise by the unauthorized act of the treasurer. If he could not bind the city by a direct contract, he could not do it

indirectly by other acts upon his part which might operate as an estoppel if the authority to contract existed.

A number of authorities have been cited by the appellant upon what constitutes a payment, which hold that it is an act calling for the exercise of the will or requiring consent, and he contends that it is evident that there was no intention upon the part of the treasurer to regard the paying out of the city's money in the first instance as a payment of the warrants, in consequence of his thereafter for a time carrying the warrants as so much cash and subsequently disposing of them to other parties. But it seems to us that the intention of the treasurer in this instance could make no difference. The city was the party directly and vitally interested. It was the city's money that was being used, and after the act had been so done, it was for the city to indorse or repudiate it. It is claimed by the appellant that the city failed to give the treasurer credit for the moneys paid out in the first instance, but there is no proof as to this. The treasurer might have credited himself upon his books with the money so paid, if he saw fit to do so, and there is nothing to show whether he ever had any subsequent settlement with the city or not with reference to that matter. Nor to show what became of the moneys he received upon a reissuance of the warrants, whether he had such moneys on hand or whether the money was lost or misappropriated in some manner. The ordinary presumption would be that when these warrants found their way into the hands of the treasurer they had been paid. *First National Bank v. Harris*, 7 Wash. 143 (34 Pac. 466); Lawson's Presumptive Evidence, rule 75, b; *Mayor v. Ray, supra.*

This is substantially conceded by the appellant. He says:

" It is not disputed that, from the unexplained possession of a warrant by the treasurer upon whom it was drawn, the court might presume payment."

But the appellant contends that this is a rebuttable presumption, and that it is rebutted by the facts shown here. Undoubtedly the first holders who presented the warrants understood that they were paid. The treasurer intended to and did pay out the city's money to obtain them from such holders, and his mere intention to afterwards reissue them could not defeat the city's right to treat it as a payment.

In 2 Daniel on Negotiable Instruments (4th ed.), § 1221, cited by appellant, it is said:

" By payment is meant the discharge of a contract to pay money by giving to the party entitled to receive it, the amount agreed to be paid by one of the parties who entered into the agreement. Payment is not a contract. It is the discharge of a contract in which the party of the first part has a right to demand payment, and the party of the second part has a right to make payment."

The contention that the parties who first presented the warrants were not at that time entitled to receive the money is based upon two grounds, one being that there was not sufficient money in the treasury to take them up. But the proof is not clear upon this point, for the treasurer was receiving money continually from various sources. It is also based in part upon the case of *Eidemiller v. Tacoma*, 14 Wash. 376 (44 Pac. 877), in which case it was held that such warrants were payable in the order of their issuance. But in that case § 58 of the charter of 1886 (Laws 1885-6, p. 205), was not called to the attention of the court. By this provision such warrants were to be paid in the order of their presentation for payment, and it in effect repealed the ordinance upon which the decision in that case was based. The new charter of 1890 superseded the 1886 char-

ter, and it contained no provision as to the order of payment. But, as we have said the point is not material here as affecting the rights of the appellant. Conceding that the parties who first presented the warrants might have objected to their payment out of the regular order, they did not do so. Apparently the city has not objected to it and the appellant has no right to object.

We do not think the case of *Willey v. Greenfield*, 30 Me. 452, is entitled to much weight as an authority upon the question of payment arising from the possession of the warrants by the treasurer, for evidently the case received little consideration by the court, the opinion consisting of a statement of the decision in three or four lines.

*McConnell v. Simpson*, 36 Fed. 750. cited by appellant, is directly against his contention. Appellant would concede this were it not for the fact that it appeared in that case that the treasurer was forbidden to buy or sell, or in any manner deal in, warrants, and he contends that there is no such prohibition in this state. But, however that may be, when applied to the treasurer as an individual, it is immaterial for in this case he was dealing in them with the city's money.

Appellant insists that *Mayor v. Ray, supra,* is not an authority upon the proposition that when the warrants came into the hands of the treasurer, as evidence of indebtedness they were thenceforth *functus officio,* and ceased to have any validity, holding that this part of the opinion was never indorsed thereafter by the court and was but an expression of a minority. But it seems to us that the rule is a sound one, and sustained by other authorities cited herein, that when a city's money obligation comes into the hands of its treasurer by the use of the city's money, it is thereafter dead, and cannot be given life by a reissuance on the part of the treasurer, although under some

circumstances it might be evidence of a claim or the foundation of an action to recover the money of the treasurer by the person subsequently obtaining it.

*Blake v. Commissioners of Johnson County*, 18 Kan. 266, has no particular bearing as that was an action by the county on the treasurer's bond for a breach of official duty.

Without discussing particularly the case of *Chemung Canal Bank v. Supervisors*, 5 Denio, 517, cited, it is sufficient to note that the action was substantially regarded by the court as one upon the original claims, rather than upon the orders which had been substituted without authority.

*Morrow v. Surber*, 97 Mo. 155 (11 S. W. 48), does not apply, for that was an action by the treasurer to recover money paid to a warrant holder who was not then entitled to payment, the money having been paid under a mistake by a clerk upon the representation of the warrant holder that it was due and payable. We have no doubt of the right of the treasurer to repudiate such an action and recover the money paid.

Authorities are also cited upon the proposition that a company may purchase its own bonds as an investment, and reissue them, if the facts show that there was no intention of paying them when purchased, and that they would be valid obligations in the hands of a subsequent holder. We have no doubt of this proposition as applied to private corporations, and it may be true, under some circumstances, when applied to public corporations, as in *Elser v. City of Fort Worth* (Tex.), 27 S. W. 739, cited. But the investment of municipal money in the obligations of the municipality, negotiable or otherwise, should be held to work a cancellation of them to the extent that they could not be reissued without express municipal authority and action. In this instance it would have re-

quired an ordinance, conceding that the power to pass such a one existed. The duties of a city treasurer are fixed by law and all parties dealing with him are bound to take notice of the limitation upon his powers, and that as such he has no authority to issue municipal obligations. The treasurer's acts, here involved, certainly bordered on criminality, to state it mildly. The parties who obtained from him the warrants on their reissuance, and the subsequent holders, stand charged with notice of his acts. Their claims must be viewed in the same light as if they had fully participated therein, and that ends the case with the paid warrants.

We are of the opinion that the issue of the salary warrants was unauthorized, under the holding of this court in *Taylor v. Tacoma*, 8 Wash. 174 (35 Pac. 584). The case of *Tacoma v. Lillis*, 4 Wash. 797 (31 Pac. 321), does not help appellant, for in that case the claim had been paid in money, and the authority to pass an ordinance providing for the salary was not in question. Therefore, there was a good defense as to the Boardman warrant.

The judgment of the lower court is affirmed.

REAVIS and ANDERS, JJ., concur.

DUNBAR and GORDON, JJ., dissent.