# CHARLESTON.

## J. W. GARDNER v. L. F. NICHOLS.

Submitted September 11, 1917.    Decided September 25, 1917.

1. PAYMENT—*Recovery of Money Paid—Declaration—Demurrer—Special Count.*

   A special count in a declaration in assumpsit, claiming right of recovery of money as having been paid to the defendant under a mistake of law or fact and setting forth all of the facts and circumstances relied upon as constituting a ground of recovery, is, in legal effect, a mere common count for money had and received, and a demurrer thereto is properly overruled.    (p. 739).

2. SAME—*Mistake—Recovery.*

   Upon mere proof that his deputy, after having paid out of public funds in his hands for the purpose, interest coupons constituting obligations of a board of education, which the deputy had the right so to pay, pledged or exchanged the same to a stranger for money in an equal amount, representing his purpose in so doing to be the procurement of money with which to discharge other urgent obligations of the board of education, which it was his duty to discharge, and that such coupons were subsequently taken up from the holder by another of his deputies, without notice of the previous payment thereof, a sheriff cannot recover from such stranger the amount of money so subsequently paid to him.    (p. 740).

3. SCHOOLS AND SCHOOL DISTRICTS—*Obligation of Board of Education—Pledge or Exchange—Liability.*

   Such a pledge or exchange does not alone and of itself create any debt or new obligation of the board of education nor purport to do so.    (p. 740).

4. SAME—*Obligation of Board of Education—Extinguishment.*

   Nor does such first payment of coupons by a deputy extinguish them utterly and for all purposes.    The functions of such paper do not end, nor do all rights and obligations respecting it cease, until it has been finally surrendered by the paying officer, in settlement with the issuing corporation.    (p. 742).

5. PAYMENT—*Recovery—Loss.*

   To recover in such an action, a sheriff must prove that he has sustained an actual loss, by reason of the subsequent payment.    (p. 742).

6. SAME—*Recovery—Evidence.*
   Evidence offered in such case, tending to prove that the district obligations for the discharge of which the deputy represented it to be his purpose to use the money obtained by the exchange or pledge of the coupons, were subsequently paid, without more, is properly rejected. (p. 744).

7. SAME.
   Evidence offered in such case, tending to prove that the sheriff had reason to believe, before the coupons were pledged or exchanged, that his deputy was unfaithful and derelict, is properly rejected ,the negligence it tends to prove being too remote. (p. 744).

Error to Circuit Court, Jefferson County.

Action by J. W. Gardner, Sheriff, against L. F. Nichols. Judgment for plaintiff on a directed verdict, motion to set aside verdict overruled, and defendant brings error.

*Reversed, verdict set aside, and case remanded for new trial.*

*John H. Porterfield,* for plaintiff in error.

*Brown & Brown,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment complained of is based upon a verdict for the plaintiff in an action of assumpsit, rendered in obedience to an instruction of the court, to the giving of which an exception was taken. This one and another interposed to the action of the court in overruling a motion to set aside the verdict constitute the grounds of two assignments of error. Others are founded upon the overruling of a demurrer to the special count of the declaration and the rejection of certain evidence offered by the defendant.

Although the special count is elaborate and details all the facts upon which the plaintiff's claim is founded, it is, in substance and effect, only a common count for money had and received, for it proceeds upon the theory of right to recover money paid by the plaintiff to the defendant under a mistake. 2 Enc. Pld. & Prac. 1018, citing numerous authorities. Since there is a common count for money had and received, under which all the facts are admissible, there is no occa-

sion to inquire whether the special count is vitiated by its admissions of facts precluding right of recovery under it. Much of it could be disregarded as constituting surplusage, but some of the facts set forth might deny right of recovery. Whether they, or they together with others disclosed by the evidence, do or not, is the inquiry to be disposed of upon the two principal assignments of error, going to the sufficiency of the evidence adduced.

The plaintiff was sheriff of Jefferson County for a four year term commencing, January 1, 1913. C. Bloom Wentzell was, until Oct. 29, 1915, his deputy charged with the collection of taxes, levies and assessments in the magisterial district of Harpers Ferry, and also with the duty of paying orders and other demands upon the county and the board of education of that district, out of the funds collected by him. Among the obligations of said board of education, were certain coupon bonds issued for the purpose of raising money to erect a school house, and it was the duty of the deputy to pay the interest coupons falling due, the 1st day of July in each year. Sometime in the year 1915, on or about July 1, he took up 52 of the coupons, amounting to $650.00. Later, saying he needed money with which to pay orders held by, or soon to be issued to, the school teachers of the district, he borrowed $650.00 in money from the defendant and pledged to him, as security therefor, the 52 interest coupons, including six taken up from the defendant himself. On the same day, September 27, 1915, the defendant delivered the coupons to a bank for collection. About one month later, Wentzell was removed from office, and the coupons were paid January 3, 1916, by T. Grove Henkle, Wentzell's successor as deputy, without notice of their having been previously paid by Wentzell and negotiated by him to the defendant; but, immediately after having paid them, Henkle discovered the fact, by means of a memorandum on the envelope in which they were received. The defendant swears he did not know Wentzell had paid for the coupons with public money, nor that the six coupons taken from him were among those pledged, nor does it appear from any positive evidence that they had been paid for with public money. Presumptively, however, they had.

There is no proof that Wentzell used the money borrowed from the defendant for any improper purpose or misappropriated it. He claimed he was borrowing it for use in the payment of lawful orders issued, or to be issued, by the board of education, and he may have done so and surrendered the orders to his principal. If he obtained it for his personal use and made such use of it, the defendant is not shown to have had any knowledge of his corrupt intention. On the contrary, he was advised that it was to be used in the discharge of lawful demands upon public funds.

The assumption that the pledge of the coupons made by the deputy after he had paid them, created a new or additional debt of the board of education, is not well founded. It had a certain number of coupons to provide for, and they only were outstanding. After the pledge complained of, the number to be satisfied remained the same as before. The sheriff, not the deputy, was answerable to the board of education for the full amount of the levies and other district funds, and his obligation to the board was not discharged pro tanto by a mere payment of the coupons by the deputy. He could be acquitted as to the sum so paid, only by a surrender of the coupons in his settlement with the board, or a credit for an equal amount lawfully obtained in some other way. The board had not credited him with them, in any settlement, at the time of payment of the amount thereof to the defendant. Technically, the pledge of the coupons may have been a wrongful act, but it did not necessarily cause any loss or injury to the board. Though the coupons were not thereafter in the treasury by virtue of the payment made by Wentzell, as they should have been, the sheriff was liable for the amount thereof in money and the board had suffered no actual loss, nor incurred any additional debt.

This relation of creditor and debtor, incident to the official and private agency established by law and contract, subsisted between the sheriff and his deputy. Though officially related, they owed each other duties, and were bound to make settlements, into which personal, as well as official, rights entered, and official derelictions and wrongs could be compensated for or satisfied in money. Viewed from the

standpoint of this relationship, the transaction between the deputy and the defendant was not harmful or injurious to the sheriff in any practical sense. He had not obtained title to the coupons as against the deputy, nor extended the deputy any credit for them. If he had credited them in a settlement and then paid them a second time, he would have suffered an injury by the second payment. As he had not done so, the deputy was liable to him for the amount thereof, after the pledge of the coupons, as he had been before. The defendant did not take the coupons as a gift. He gave the deputy an equivalent amount of money, and, if the latter was honest and accounted to his principal, agreeably to his avowal of intention at the time he got the money, the plaintiff has suffered no loss. After the pledge, the deputy had the money with which to account to his principal, instead of the coupons, and that sufficed fully to satisfy his obligation, though not for strict performance of his official duty. As between them, the money was as good as the coupons, for it would have been the end of the law in an action against the deputy. Manifestly, therefore, if the plaintiff has suffered any practical and pecuniary loss, it was occasioned, not by the pledge or exchange of the coupons for money, but by the default and insolvency of his deputy, to which the pledge or exchange did not necessarily contribute, and there is no proof that it did, in point of fact.

Nor can the coupons in question be deemed to have been legally extinguished in every sense, by the first payment, so as to render them worthless in the hands of a technically wrongful transferee. Strictly speaking, payment by an officer only out of public funds, is contemplated, but, if the paying officer should take up orders with his personal funds they would be good as against the public, and, if he should take them up out of public money, after having settled and paid up in full, or should by oversight omit them from a settlement and pay the balance in money, they would be clearly good in his hands, for the district would suffer no injury by payment of them. If exonerated from payment by the irregularity, if any, it would profit to the extent of the amount of the exoneration. If these coupons had not been

paid to the defendant and the sheriff had fully paid to his successor all he owed the district, no public loss would result from their payment, wherefore the board of education could not resist payment. Hence, such paper is not utterly and completely extinguished until it has been surrendered to the issuing corporation in a settlement with the treasurer. Until it has been so surrendered, it has some virtue in the hands of any person holding it for value and in good faith, whether an officer or a private person, although it may have lost the quality of negotiability, if originally negotiable, or suffered other disparagement. According to all authorities, the board of education could have ratified the transaction, in so far as it was illegal, and paid the coupons to the defendant. *Mayor* v. *Ray,* 86 U. S. 468; *Bardsley* v. *Sternberger,* 17 Wash., 243; *Elser* v. *City of Fort Worth,* 27 S. W. 739. The board of education is no party to this action, the controversy involves none of its rights, nor, so far as the evidence discloses, will the result effect it in any way.

Only in one event could the board of education have suffered any final and ultimate loss, insolvency of the sheriff and insufficiency of his bond; for the deputy's wrongful act was, in law, his act, and he was liable to the board for any resultant loss. A loss of that kind would be due to failure to take a sufficient bond as well as to the wrongful acts of the officer. No such loss by the board has been shown or intimated. The opinion of other courts examined, intimating the view that mere payment of a warrant by a disbursing officer of a public corporation, without having taken credit for it in his settlement, utterly extinguishes it, overlook and ignore the vital distinction between the corporation's financial status and that of its officer. They are separate and distinct things. The officer alone may have done many wrongs which, when righted in discharge of his duty, leaves the corporation as sound legally and otherwise as if they had never occurred.

Whether the pledge or sale of the coupons was an act done *colori officii* might be relevant and material in a controversy between the sheriff and the board of education on an issue of liability as to the money obtained from the defendant, but

it is not deemed to be so here, since the transaction between the deputy and the defendant was contractual, involving voluntary action of both parties, and not unilateral, working a forceful or wrongful invasion of any personal or property right of the defendant, under color of official authority.

The facts proved do not, for reasons stated, make out a case of right of recovery of money paid under a mistake of law or fact.

No error is perceived in the rejection of the evidence offered to prove Wentzell had paid all but two of the teacher's salary orders for the year 1915. None of it tended to prove he had paid them with the money obtained from the defendant or surrendered them to his principal. Whether it would have been admissible, if it had, there is no occasion to inquire.

Nor did the court err in rejecting evidence offered to prove the plaintiff knew his deputy was unfaithful, sometime before he removed him. His negligence in delaying removal, if any, was too remote to have any bearing upon the issue involved here.

The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed, verdict set aside, case remanded.*